## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1905.

*(Continued from Volume 115.)*

## THEIN, Respondent, v. BRECHT BUTCHERS' SUPPLY COMPANY, Appellants.

### St. Louis Court of Appeals, January 30, 1906.

1. **MASTER AND SERVANT: Prima-Facie Case: Safe Place to Work.** Where plaintiff was put to work by his employer operating a machine run by electricity and used for cutting wire, and where the evidence showed that the ends of the wire when cut would fly in all directions as far as five or ten feet and strike the workmen sometimes so hard as to draw blood, and after the accident on account of which the plaintiff sued, a simple and inexpensive contrivance was adjusted to the machine which prevented the wires flying, this was sufficient in an action for damages caused by the loss of plaintiff's eye from the flying end of a cut wire to make out a prima-facie case.

2. ———: ———: **Contributory Negligence: Assumption of Risk.** Where the plaintiff in such case was a boy thirteen and one-half years old, it was a question for the jury as to whether he was guilty of contributory negligence in working on the machine, and it was also a question for the jury whether he assumed the risk of such injury.

Appeal from St. Charles Circuit Court.—*Hon. J. D. Barnett*, Judge.

AFFIRMED.

116 App—1 (1)

*Geo. W. Lubke, Geo. W. Lubke, Jr.,* and *Theo. C. Bruere* for appellants.

Defendant's peremptory instructions that plaintiff was not entitled to recover should have been given by the court. There was no evidence that the machine in question was dangerous or unusual or that it could have been guarded any further or greater than it was and still be satisfactorily operated. The master is not an insurer of the safety of his servant in and about his employment, and is not bound to furnish absolutely safe appliances with which to work. His duty is discharged when he furnishes reasonably safe, or the usual appliances in the particular line of employment. Mitchell v. Railway, 97 Mo. App. 411; Kane v. Falk Co., 93 Mo. App. 209; Mason v. Fourteen Mining Co., 82 Mo. App. 367. He is not bound to furnish the latest or best or even the safest appliances for the use of the servant, nor is he bound to adopt any particular method in doing his work, but may conduct his business in his own way. Berning v. Medart, 56 Mo. App. 443; Beckman v. Anheuser-Busch Brewing Assn., 98 Mo. App. 560, and cases cited; Purcell v. Tennent Shoe Co., 187 Mo. 276. Where the machine is in working order and is reasonably safe and the servant familiar with its operation, and is injured in its use, there can be no recovery by the servant against the master for the injury. George v. St. Louis Manufacturing Co., 159 Mo. 333. The master owes no duty to point out to or instruct his servant concerning dangers of a machine which are obvious or become obvious by use. Nugent v. Kauffman Milling Co., 131 Mo. 241; Kleine v. Clothing Co., 91 Mo. App. 102; Richardson v. Mesker, 171 Mo. 666. The first instruction given for the plaintiff is erroneous in the part italicised. There was no evidence that it was feasible or practicable to guard the machine further than it was guarded or that it was usual or customary to place any further or other guards on such machines by users thereof, but

simply assumes that such evidence was introduced. Marr v. Bunker, 92 Mo. App. 651; Day v. Railway, 81 Mo. App. 471; Stokes v. Ravenswood Distilling Co., 64 Mo. App. 420; Culbertson v. Railway, 140 Mo. 35; Robertson v. Railway, 152 Mo. 382; Flynn v. Transit Co., 87 S. W. 560.

*Daniel Dillon* and *T. F. McDearmon* for respondent.

That it is the duty of the master to furnish his servant with a place in which to work and with appliances that are reasonably safe, is elementary law. Minnier v. Railway, 167 Mo. 112; Holmes v. Brandenbaugh, 172 Mo. 64; Zellars v. Mo. W. & L. Co., 92 Mo. App. 117; Shore v. Bridge Co., 11 Mo. App. 278. Defendant contends that he is not liable if he furnished the usual appliances for work of the kind. We dispute the proposition that the master is excused when he furnishes the usual appliances, if the appliance is not reasonably safe and the master knows it, or by ordinary care, would know it. Keely v. Parker Washington Co., 107 Mo. App. 495; Koons v. Railway, 65 Mo. 597.

STATEMENT.—The plaintiff asked, and the court gave, the following instructions, to the giving of each of which defendant then and there excepted:

"1. The court instructs the jury that if they believe from the evidence that plaintiff, William Thein, was employed in 1901 by defendant to work for it in its manufactory in the city of St. Louis, Missouri; and that after said plaintiff had worked for defendant at machines which were run by hand or foot power, defendant directed said plaintiff to work at and operate a machine for cutting wire, which was run and moved by electric power, and directed said plaintiff to sit down near to and in front of this machine, on a low bench or stool, and insert the wire into this machine to but cut

by it into certain lengths. And if the jury further believe from the evidence that on or about November 15, 1901, while said plaintiff was working and operating said machine for defendant, as directed by defendant as aforesaid, a piece of wire cut off by said machine sprung or flew off and against and into the left eye of said plaintiff with such force as to cut and injure said eye so severely that, as the direct result of said injury, the sight of said eye was entirely destroyed. And if the jury further believe from the evidence that the knives or part of said machine which cut said wire moved with great rapidity and force, and that in consequence thereof, the pieces of wire when cut off by said machine did spring and fly off with force and were liable and likely to hit or strike and injure the eyes of plaintiff, when sitting on said bench or stool operating said machine and putting the wire into said machine to be cut off as aforesaid. And if the jury further beileve from the evidence that defendant did not place or cause to be placed any screen or guard in position to prevent said wire, when so cut off, from springing or flying into or against the eyes of the person sitting on said bench or stool and operating said machine as aforesaid. And if the jury further believe from the evidence that it was feasible and practicable for defendant to place a guard or screen on said machine, and in such a position that it would prevent said pieces of wire when cut off by said machine as aforesaid from springing or flying against and into the eyes of the person operating said machine as aforesaid. And if the jury further believe from the evidence that defendant knew or by the exercise of ordinary care and diligence would have known, before plaintiff was hurt and injured as aforesaid (if you find he was so hurt and injured), and in time by the exercise of ordinary care to have prevented said hurt and injury, that the pieces of wire when cut off with force and were liable and likely to strike and injure the eyes of plaintiff, while he was so operating said machine, as directed by defend-

ant as aforesaid.   And if the jury further believe from the evidence that at the time of his said injury (if you find he was injured as aforesaid) said plaintiff was thirteen years and seven months old, and without knowledge of the construction or force or power of machinery and inexperienced in its use, and unaware of the liability or likelihood of being injured by being struck in the eye by said pieces of wire when cut off by said machine, as aforesaid (if you find that such liability or likelihood existed), then your verdict must be in favor of plaintiff, provided the jury further find from the evidence that plaintiff William Thein, at the time he received said injury, was exercising such care for his own safety as an ordinarily prudent boy of his age and experience and capacity would exercise.

"2.   The court instructs the jury that a boy of thirteen years and seven months of age, and inexperienced, is not held to the same degree of care and prudence as an experienced person of mature age, and if the jury believe from the evidence that said plaintiff William Thein, at the time he received the injury to his eye mentioned in the evidence was thirteen years and seven months of age, and inexperienced in the use or knowledge of machinery, and if the jury further believe from the evidence that said plaintiff at the time of receiving said injury was exercising that degree of care which a boy of ordinary prudence of the age, experience and knowledge of plaintiff would exercise ,then said plaintiff was not guilty of any negligence which contributed to his said injury.

"3.   The court instructs the jury that if they believe from the evidence that the danger of being hit or struck in his eye by the pieces of wire cut off by the machine which plaintiff William Thein was operting, and mentioned in the other instructions and in the evidence, was apparent to a person of mature years or a person accustomed to such machinery and acquainted with its power and force, yet if the jury further find from the

evidence that said plaintiff was at the time of his said injury thirteen years and seven months old, and inexperienced in the use of machinery and without knowledge of the force or power with which said machine was run or moved, and that by reason of his youth and inexperience and want of knowledge he was not aware of the danger of being struck in the eye by the pieces of wire cut off by said machine, then the fact alone that such danger was apparent as aforesaid will not prevent said plaintiff from recovering in this action.

"4.   The court instructs the jury that it was the duty of the defendant to furnish plaintiff William Thein with a reasonably safe place in which to work while he was working for defendant, and if the jury believe from the evidence that sitting on the bench or stool mentioned in the evidence in front of the wire-cutting machine shown the jury and mentioned in the evidence was not a reasonably safe place for said plaintiff to be while operating said machine, and cutting wire therewith, when there was no guard on said machine to protect the person working same, then defendant was guilty of negligence in furnishing said plaintiff with said bench or stool, and directing him to sit on said stool in front of said machine while cutting wire with said machine.

"5.   If, under the evidence and other instructions, the jury find in favor of plaintiff, and find that as the direct result of being struck in his eye by the piece of wire mentioned in the evidence, plaintiff has wholly and permanently lost the sight of the said eye, then in assessing his damages, the jury will allow him such sum as they shall believe from the evidence will reasonably compensate him for all pain of body and mind, if any, which plaintiff has sustained as the direct result of the injury received by being struck in his said eye by the piece of wire mentioned in the evidence, and also such sum as the jury shall believe from the evidence will fairly compensate him for all personal discomfort, if any, which plaintiff shall sustain as the direct result of said injury,

and also such sum as the jury believe from the evidence will fairly compensate plaintiff for all losses of earnings, if any, which plaintiff will suffer as the direct result of said injury, after he shall have attained the age of twenty-one years, in all not to exceed the sum of $10,000.

And at the instance of the defendant the court gave the following instructions:

"3.   The court also instructs the jury that the defendant Gus V. Brecht Butchers' Supply Company was not an insurer of the safety of the plaintiff in and about his work, and was not required to furnish him an absolutely safe place or appliance to do his work in; that all defendant was required to do was to furnish to the plaintiff a reasonably safe place and appliance, and if the jury from the evidence believe that defendant did this, and also believe that plaintiff by using the appliance properly and doing his work with ordinary care and prudence, would not have been injured, then the jury should find for the defendant.

"4.   The court also instructs the jury that the defendant company was not bound to provide the latest, best or safest appliance for the use of the plaintiff in doing his work, but that defendant company performed its duty in law when it adopted an appliance or machinery which was in general use or was reasonably safe; also that the defendant was not bound to adopt any particular method in having its work done, but that defendant had the right to conduct its business in its own way. Therefore, if from the evidence and circumstances in evidence the jury believe that the kind of machine which the plaintiff operated for defendant was in general use or was reasonably safe when used by an ordinarily prudent and careful person, then, notwithstanding the plaintiff may have been injured, he is not entitled to recover in this action, and the jury should find in favor of the defendant company.

"5.   If from the evidence and circumstances shown

in the evidence, the jury believe that the injury to the plaintiff was the result of an accident which could not have been foreseen by an ordinarily prudent and reasonable person, then they will find in favor of the defendant company.

"6. The court also instructs the jury that there is no evidence in this case that on account of plaintiff's minority he was unable to perform the service required of him in defendant's employment; and the jury are further instructed that the defendant company or those employed by defendant as superiors to the plaintiff, were not bound to warn, caution or notify plaintiff of dangers in doing his work which he, the plaintiff, as a reasonably prudent person of his age, ought himself to have observed.

"7. The court further instructs the jury that it was the plaintiff's duty to exercise reasonable care to avoid danger while performing his work for defendant; and if from the evidence the jury believe that he failed to exercise such reasonable care and that this lack of care upon his part contributed directly to his own injury and was the proximate cause thereof, then the jury will find in favor of the defendant company.

"8. The court also instructs the jury that the plaintiff, when he entered the employ of the defendant to do the work at which he was injured, himself assumed all the risks incident to the performance of said work, which he, as a reasonably prudent person, could or might have observed; and therefore, if the jury believe from the evidence that plaintiff when he assumed the performance of said work for defendant, by reasonable care upon his part would have known that he might be injured in doing said work, then he is not entitled to recover in this cause and the jury will find for the defendant company.

"9. If from the evidence and circumstances shown in evidence the jury believe that it was not feasible or practicable to use and operate the machine if there was

placed a guard or screen thereon, or the jury from the evidence and circumstances in evidence believe that it was not usual for persons running like machines to place screens or guards thereon, then the jury are instructed that the defendant is not liable in this action because of such omission of a guard or screen.

"10.   If from the evidence, direct and circumstantial, the jury believe that plaintiff was struck in his left eye by the end of a long wire coming from the coil or spool, on the left side of the machine, and not by a piece of wire cut off by said machine; then under the pleadings in this case the verdict should be for the defendant.

"11.   The court instructs the jury that the burden of proof is upon the plaintiff to establish by a preponderance of the evidence the allegations of negligence on the part of defendant relied upon by plaintiff, and by a preponderance of the evidence is meant the greater weight of testimony, and if you believe that the evidence does not preponderate in favor of plaintiff as to such allegations, then and in that case your verdict must be for the defendant."

GOODE, J. (after stating the facts).—This is an action for a personal injury received by the plaintiff in defendant's factory on November 15, 1901. When hurt, plaintiff was thirteen and one-half years old, well educated for his years, and of good intelligence. The defendant company conducts a manufacturing establishment in St. Louis wherein it makes vessels used in the meat industry, such as lard pails. Plaintiff's employment in the factory began in July, 1901, and therefore he had worked about four months before he was hurt. His first work was on a machine operated by foot power, which cut wires into lengths suitable for handles to lard pails. He did other work occasionally; cut holes in the pails to receive the handles and bent the ends of the wires into hooks to fit into the holes. Sometime in Au-

gust, the machine by which he was hurt was put into the factory. It was a contrivance for the cutting of wires, operated by electric power instead of by manual or foot power. It was fastened to an upright post and rested on a heavy cross-timber, at a height above the floor which permitted the operator to sit on a stool and feed the wire to it. It received the power which rotated it by means of a shafting and belts. There were two knives on it to cut the wires instead of one knife working like a pair of scissors, which the other machine had. Plaintiff worked on the machine occasionally from the time it was put in until the date of his injury. As the operator sat on the stool in front of the machine, his face was from two to four inches away from the blades. There was testimony showing that as high as 2,500 wires were cut in an hour. It seems the wires were furnished to the operator in bales and the ends had to be cut off. When cut, the ends would fly in all directions and as far as five or ten feet from the machine and would strike the workman on the hands and face so hard as to inflict scratches and sometimes draw blood. The foreman of the shop was in the habit of passing by the machine and knew how it worked and where the ends of the wires would fall. The knives revolved rapidly and with considerable force. The injury on which this action was founded, was due to the end of a wire striking the plaintiff in the eye and hurting it so badly that the sight was destroyed. Such, in substance, is the testimony for the plaintiff as given by many witnesses. The negligence alleged is that the machine was very dangerous, not guarded or screened in any way so as to prevent the wires from hurting the operator, when it might have been screened, and failure to warn the plaintiff of the hazard incident to his work. The defenses were a general denial and a plea of contributory negligence.

A verdict was returned for the plaintiff and a judgment having been entered in accordance with it, the defendant perfected this appeal.

It is self-evident that the machine which hurt the plaintiff was highly and unnecessarily dangerous. There was abundant evidence to prove that immediately after his eye was put out, a simple and inexpensive contrivance was adjusted on the machine which would prevent such an accident from occurring. This was a tin hood or screen, which intercepted the upward movement of the pieces of wire and caused them to fly downwards instead of into the operator's face. When the case was argued, all the members of the court were of the opinion that there was evidence for the jury and that the defendant's assignment of error because the trial court refused to direct a verdict in its behalf could not be sustained. Reading the record has confirmed that opinion. This is practically all there is to be considered on the appeal. The plaintiff's youth made his alleged contributory negligence a question for the jury. In truth, there was nothing to show he was guilty of contributory negligence but the bare fact that he worked on the machine. The argument in this connection is that on the testimony for plaintiff, the risk of injury was so great and apparent that, in common prudence, he ought to have relinquished his employment. Considering the plaintiff's youth, it was, on any theory of the law of assumption of risk, for the jury to decide whether or not he assumed the risk of injury.

We might add that there is nothing to show the plaintiff realized at all that he was in danger of serious injury. He was an immature boy and probably never thought of a calamity happening to him. The instructions will go with this opinion. We have studied them and think the defendant was fairly treated. No charge asked by it was denied except one in the nature of a demurrer to the evidence for the plaintiff.

The judgment is affirmed. *Bland, P. J.,* and *Nortoni, J.,* concur.